I assume that you found this case interesting. Oh, we do. This case reflects... I wonder why I took community property in law school. This case reflects interesting issues that basically reflect a change in additions to our judicial system and how they change over time. Primarily, in 1872, as you've all read, the state of California adopted a statute that reflected the common law of vicarious liability. And there is an introductory phrase in the vicarious liability statute often overlooked. Everyone goes vicarious liability, employers are always liable. And back in 1872, the legislature actually reflected on this and said, well, if an employer is required by law to employ a particular employee, then the employer is not liable under this vicarious liability statute. So as far back as 1872 in California, there was a reflection that there's a possibility that there may be situations where employers are required to employ a certain employee. I'm sorry to just go around the law, the plain language of the insurance exclusionary clause. You're jumping into policy, aren't you? What about the language of the... The policy language, the exclusion? Yeah, the auto exclusion and what Partridge deems Judge Trebriner's exegesis on concurrent independent causes. Before we get into deciding whether there is some policy that overrides all that, shouldn't we understand whether you even get there? Well, I perceive the ADA application, because the issue in this case boils down to, is compliance with the ADA independent or dependent upon the operation of the motor vehicle? Well, but you have some very plain language on an auto exclusion. And your argument of what I have a problem with also on some of your arguments is, how would we cabin or limit the concurrent proximate causes of an accident under your interpretation of the contract? I mean, let me give you, you know, I mean, obviously, because when you ask someone to do something, you say, go there. You can't, you know, completely gut the exclusion. What if the boss yelled at the employee in the morning and got the employee upset? Or what if the boss made the employee stay up really late the night before and work, so the employee was tired or the employee was upset when driving? Under your theory of, you know, concurrent proximate cause that you're asking us to accept, well, then the auto exclusion wouldn't apply, because the boss did something that upset the person and made them have the accident. Well, I want to just slightly change your examples to a better one. What if the employee consumed alcohol the night before, was still under the slight effect of alcohol, and then began to operate the motor vehicle? My argument would not apply. There would not be coverage under the CGL policy. And the reason being is that that is not a protected act. The employee did not have, had not tested positive for drugs, was not in a rehab program. The employer was not required by law to employ that employee. The same would apply in this situation. If Mr. Sias had never tested positive for drugs, had never been pulled from driving or suspended from driving, and had had this accident, this case wouldn't be here. And possibly it would be, because there may be a slight distinction between the use of alcohol, which is legal, and the illegal use of drugs. But what distinguishes this case is that Mr. Sias, despite his addiction to drugs, never had an accident before he was caught. And when he was, I'll call it caught, through the drug testing process, he was suspended and removed from his duty of driving. And he was moved to, he was accommodated by being moved to another position in the company. And the accommodation was required by law, by the ADA, as a result of the fact that Mr. Sias was sophisticated enough to immediately request that he be moved, indicate that he had a problem, and indicated that he wanted to go to rehab, and he paid for the rehab, and it wouldn't take, he wouldn't take any time away from his employment. He would do all these things. But this sounds like, I'm still having a little trouble, too. What you're saying basically is the ADA created the functional equivalent of a hair-trigger pistol, right? That's correct. So now you have this employee on the job who, because of his drug addiction, if he falls off the wagon, is a loaded gun, in effect, or a hair-trigger gun. So no matter what he does that goes out and injures a third party, then there would be coverage. Presumably there's no auto exclusion if he goes out and he cuts up somebody with a chainsaw or whatever. But you're saying if he gets in an automobile and he drives, the same rule ought to apply. The auto exclusion clause shouldn't apply because the ADA has put him in that position. It's an independent concurrent cause, and the auto exclusion language and partridge and the other cases that have followed it simply are overridden? Is that what you're arguing? In a certain situation, if Mr. Ciaz had gone out that day, the day of the accident, had not had drugs in his system, did not have a vial of clean urine from his son in his backpack that he was prepared to strap on his leg if he got called to go to testing, then there would be coverage. If, however, this accident was not caused at all by drugs, he just had an accident like truck drivers do, there would not be an exception here. So the CGL policy would not be applicable because the compliance by the employer with the ADA would not have been approximate cause of or a cause, because in the third party tort liability area, a causation does not even have to be approximate cause. It just has to be a cause of the ultimate accident. But most accidents would not happen if you were careful. And there's a lot of reasons we're not careful. And our employer could be the cause of a lot of the reasons we're not careful, because they stress us out, because they make us work too hard, all of those things. I just don't see how the auto exclusion could ever have any meaning if we accept what you're saying. Everyone would be able to create a tribal issue. Well, because the auto exclusion would almost always be applicable unless the employer's compliance with ADA and whatever the particular reason was. In this case it was a disability, and it was a disability associated with addiction to drugs. So if drugs were not involved in the accident, then this case, the CGL policy would not provide coverage. The only reason the CGL provides coverage in this particular case is because what Congress has required the Mr. Sias could have hurt someone at work, he could have hurt someone before he was returned to the truck. Assuming he was still addicted at that time, he could have hurt someone at his other job, which didn't involve operating the vehicle. So that's why this, and it's not really an exception, but this rule which follows Partridge should be applicable, but it is applicable to a very narrow situation where the accommodation, the preference that you're giving to people with disabilities, it has to be that disability which ultimately caused an accident. Let's just go back to the alcohol. Presuming that he was under the influence of alcohol at the time. Drugs is what it was. Huh? It was drugs, Your Honor. I know. But let's assume that he was under the influence of alcohol at the time, not drugs, and was involved in this accident. Would you be arguing that the exclusion did not apply? I would. I can't answer that. Well, my answer to that question would be dependent upon had he had an alcohol-related problem at work, be it driving or not driving. Had he previously shown up to work and was drunk, or had he been. But is there anything in this record? What? Is there anything in this record about that? Take this record. That would indicate that he had an alcohol problem? Right. I don't, well, usually alcohol and drugs go together, but. Well, okay, but then you're asking us to say, okay, the exclusion still wouldn't apply, because even though there's nothing about alcohol in this record, we all know that people that abuse drugs then therefore abuse alcohol, and therefore we're in the same trick bag. Well, it's just difficult for me to answer the hypothetical question with respect to alcohol, when in this case it was drugs. There was a prehistory of drug use. He was tested, like the employer does. Okay, but there's not a prehistory of alcohol use. And what Judge Strahm asked you, if it were alcohol, would you still be arguing the same exclusion? If there was a prehistory of. But there's not in this record. Of alcohol use. Right. Okay, so then. So on this record. On this record, it, the exclusion that we're seeking would not be applicable, or the exception to the exclusion of, the exception to the auto exclusion would not be applicable. If in this case he had used drugs and been using drugs for years, but the employer didn't know about it, and this accident occurred, you wouldn't be arguing for an exclusion under those, that the exclusion didn't apply under those circumstances, would you? That is correct. So it's only because the ADA required him to put him back on the payroll in a driving position. That's correct. After they, he had been put into rehab, had apparently been clear for a year, so the employer had information available suggesting that he had addressed and resolved his drug problem, and so reinstated him to drive under those circumstances. The employer doesn't get the benefit of this provision because of the ADA. The, yes. Okay. All right. Do you want to save your time for rebuttal so that you can respond to others, or use your time as you wish, but the red clock is counting down. I will save my time. Thank you, Your Honor. Sure. Good morning, Your Honors. Good morning. Steve Ellingson for Respondent. Now, did the ADA require you to put him back as a driver? It just required you to keep him, right? That's my position, Your Honor. They required you to put him back as a driver? No, they're not required to put him back as a driver. They're only required to keep him. Okay. The distinction here is that the reason that you can't disassociate the vehicle use from the cause of the accident is because of that exact reason, Your Honor. The company didn't have to put him behind the wheel of a truck. They just had to give him a job. And once they put him behind the wheel of a truck, okay, maybe that's alleged negligent entrustment, but there are several cases that say negligent entrustment of a vehicle can't be disassociated from the use of the vehicle. Therefore, the auto exclusion applies. Another thing that I think is important to keep in mind here, a lot of the appellant's argument, I think, is theoretical in a vacuum. It's important to keep in mind the specific facts of this case and the purpose of their overall portfolio of insurance. This isn't a case where the injured folks went uncompensated. They had a million dollars of coverage under an auto policy that clearly applied. They had $3 million of coverage under an umbrella policy that applied. Right. It's just when you're a doctor and if you're making a lot of money, $4 million is probably not enough. Exactly, Your Honor. Exactly. You argue, is it your contention that the ADA having him back on the job is or is not part of the chain of causation? It's not part of the chain of causation that's relevant to the insurance inquiry. But, no, that's not my question. The question is if this is because Partridge, in the part of the analysis, was to look to see whether or not there could have been a separate liability. In fact, in that case, they were trying to do essentially what is trying to be done here, except it's the flip side. Right, Your Honor. So the question is that I'm trying to understand, just in tort terms, where's the chain of causation here and what is the ADA aspect of it in a normal tort chain of causation analysis? Is it part of the chain of causation? Your Honor, our position is no. It's too remote to be part of the chain of causation of the accident. If there were a court order that had been litigated and the company didn't want to put him back on the payroll and he went and litigated and said they have to, it has to be a reasonable accommodation, so it was under compulsion of law that they brought him back on, would that make a difference? I don't believe so, Your Honor, because we're still talking about at the end of the day the interpretation of a written contract. That's not answering the question. Now you're talking about a defense. I'm asking about the chain of causation of the accident. You don't even get to any of this analysis until you have some kind of linkage between the accident and the events that led up to it that are in the chain of causation. I understand that there's a contract that now superimposes itself, but I'm trying to understand just because counsel for the company is arguing that this is a concurrent cause and it's independent. Well, Your Honor, I think, and excuse me if I apologize if this doesn't directly answer the question I really intended to. The concurrent causation analysis of the cases following Partridge flows through the prism of the policy and the expectations of the parties. So from a strictly tort standpoint, I would answer your question as, you know, perhaps the court's order was a causation theoretically. Is it a proximate cause? Is it sufficiently associated with the use of a vehicle in that chain? I'm not sure that the answer to that question would necessarily resolve the coverage question, whether or not a court order requiring them to put him behind the wheel of a vehicle, if I understand the hypothetical, Your Honor. Is that part of the chain of theoretical causation as opposed to proximate causation? Because even concurrent cause, Your Honor, I believe has to flow through proximate ‑‑ I agree. It's part of the proximate causation. So, no, I would still say that a court order ordering them to put him behind the wheel might be part of the theoretical, what, you know, Dean Prosser talked about in terms of theoretical causation, but not proximate causation. It's too remote, Your Honor. Okay. Your Honor, unless the court has further questions. No, thank you. Submitted, Your Honor. Thank you, Your Honor. I'm going to go in reverse.  Back to me. I'm going in reverse. The last thing with respect to this cause of ‑‑ this proximate cause being too remote, I would disagree with. I believe that this is a proximate cause. I think there may be a question as to what was the greatest cause here, but to me, there is no doubt that the employer's failure to terminate the employee after he tested positive for drugs, and his decision to comply with the ADA so that he did not generate a discrimination claim by the employee against the employer for failing to accommodate him when he admitted his drug use, said he would go to rehab, and then was suspended from driving for a year, does not, just because of the passage of time, make this event that occurred probably a little over a year and a half before the accident not the real, what I would consider, well, proximate cause. I'm sorry. I should take that back. The real proximate cause of this accident was Mr. Ciaz's use of drugs, illegal drugs, which is an intentional act. If we're looking for a secondary proximate cause, we're then looking at, okay, was it compliance with the ADA, or was the secondary cause the operation of the motor vehicle? Or the employer's decision, absent the ADA, to hire somebody who had a known drug history. Well, no. You're just saying the ADA. No, what he, excuse me, Your Honor. You're positing he's on the job because of the ADA, but what if the employer put him on the job absent the ADA? He still, you're saying it's the use of drugs. Okay, now you have a drug risk person on the job. ADA, under your analysis, if it's responsible for the employer decision to put him on the job, is a policy reason or a reason to override the auto exclusion. But if they just hired him back without the ADA, they just put him back on the job, same person, everything else played out the same, is there a difference in result then, under your analysis? I'm missing why they would put... They did it. Okay. They did it. They were negligent. They thought he was cured. They were nice. Whatever. They put him back on the job. The ADA didn't have anything to do with it. They didn't rehire him because of the ADA. They just did. And it's your question more, did they have to put him back behind the wheel? Couldn't they send him off to do a less safety... I'm saying if everything played out the way it did, except he was on the job, not because of the ADA, but because of their voluntary, independent, non-ADA-driven decision-making process, does your reading of the exception to the exclusion change because of that? I think the exclusion would apply. And in this factual pattern, he was hired and tested and did not test positive for drugs when he was hired. And so if he had had an accident before he was tested and he tested positive, the auto-exclusion exception, the auto-exclusion would be applicable. The event that caused the auto-exclusion to no longer be applicable was the fact that once he was discovered, the employer then, complying with ADA and the other acts in California, attempted to accommodate him. The other issue with respect to that was raised, too, is was there a mandatory requirement that the employer put Mr. Sias back into a driving position? And the answer is yes. The accommodation requires you to accommodate the employer and, if possible, put him back in the position. Now, we're dealing with a driver, so there are a lot of rules out there. And not only was PBC in this case looking for some type of standard out there, but also in the UPS case that's been flying around here, that employer was looking at a standard. And both of these employers adopted the Department of Transportation standards. And, of course, the Bates case is different because it deals with deaf individuals. This case deals with drugs. But from the employer's perspective, he's out there looking for, okay, now where is there a standard? In our situation with respect to drugs and alcohol, DOT has a set of standards. It's one year. It's a one-year suspension. And then, if Mr. Sias had not been put, well, excuse me, it's a one-year suspension. He went to rehab. The employer believed that he had beat his addiction. And at the end of the one-year period, the employer, again, there not being a statute specific law on that, but looking at DOT regulations as to how DOT deals with drivers who have been discovered to be on drugs or alcohol, to go back into the vehicle. And, in fact, DOT has a secondary thing with regard to discrimination. They have a ten-year rule. If you go get back in the vehicle and you test positive again some subsequent date, whether or not you have been rehabbed and there's a relapse, or as occurred in this case, I don't believe that Mr. Sias was ever rehabbed. I believe that he had this mechanism where he was able to circumvent the testing system. And as a result, the 8, 9, 10, whatever number of tests occurred after he tested positive were all probably false tests because of his use of this vial and this intentional means of trying to circumvent the requirements that not just the employer was imposing on him, but which the State imposes on him and the society imposes upon him, which we don't want drug and alcohol, people who are addicted to drugs and alcohol driving. We understand the policy. Yeah. Let's see. The one last issue. The other thing that's important here is the concept of discrimination and the concept of preferential treatment. ADA does require preferential treatment. And it's an interesting concept with respect to why a protected class in this situation, people with disabilities, become a preferential group. But the law does require that. I think we're very familiar with ADA. I shouldn't have said at the outset that it was community property. That's the next case. The other thing, what this case triggered in my mind was revisiting my tort classes. That's where I think the problem is. I think we all understand the ADA policy is trying to superimpose it in terms of tort law, insurance law, and California tort law. And then one last item. Intentional torts, when looking at causation, an intentional tort is treated as more likely or whatever the term is, the causation or the cause of a particular event than if there's negligence. If there's two concurrent causes, one is negligence and one is intentional, the intentional is going to end up controlling. And that is law in the State of California with regard to the weight that's given to intentional torts over negligent torts. Okay.  Thank you, Your Honor. Appreciate the argument. The case argument is submitted. And we will move to community property and other issues in the next case, which is the case of Operating Engineers Pension Trust versus Patelsky. May I please the Court on Brian Hodge on behalf of the plaintiffs and appellants, the trustees of the various Operating Engineers Trust funds, which are tapped partly subject to ERISA.
judges: Fisher, Callahan, Strom